# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

1) HAILIE NICOLE LUTHER, individually and
As the natural mother of G.N.L,

Plaintiff,

v.

1) THE STATE OF OKLAHOMA, ex rel,
THE STATE OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES,
an Oklahoma Political Subdivision;
2) CHLOE WALKER, in her individual capacity;
3) MICHAEL CASE, in his individual capacity;
4) CHRISTIE UPCHURCH, in her individual capacity;
5) ALICIA JACKSON, in her individual capacity;
6) JENNIFER CASE, in her individual capacity:
7) TARYN MONTENEGRO, in her individual capacity;
8) DESTENIE MIRAMONTES, in her individual capacity;

Defendants.

FILED

MAR 0 4 2025

JOAN KANE, CLERK
U.S. DIST. COURT WESTERN DIST. OKLA.
BY_____, DEPUTY

Case No. ___CIV-25-279-J_____

# COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF,
# DAMAGES, AND QUI TAM RELIEF

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................... 2

I.      INTRODUCTION.......................................................................................................... 5

II.     JURISDICTION AND VENUE.....................................................................................7

III.    PARTIES.......................................................................................................................7

IV.     FACTUAL ALLEGATIONS....................................................................................... 10

V.      LEGAL CLAIMS........................................................................................................ 18

        COUNT I:........................................................................................................... 18

        COUNT II:.......................................................................................................... 20

        COUNT III:......................................................................................................... 21

        COUNT IV:.........................................................................................................22

        COUNT V:...........................................................................................................23

        COUNT VI:..........................................................................................................25

        COUNT VII:.........................................................................................................26

        COUNT VIII:........................................................................................................26

        COUNT IX:..........................................................................................................28

        COUNT X:............................................................................................................28

        COUNT XI:...........................................................................................................29

VI.     RELIEF REQUESTED................................................................................................ 31

VII.    JURY DEMAND.......................................................................................................... 35

# TABLE OF AUTHORITIES

## <u>Cases</u>

1. *Addington v. Texas, 441 U.S. 418 (1979)* ........................................................ p. 19

2. *Camreta v. Greene, 563 U.S. 692 (2011)* ........................................................ p. 14

3. *Daniels v. Williams, 474 U.S. 327 (1986)* ....................................................... p. 10

4. *DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S.*

   *189 (1989)* ................................................................................................. p. 13, 17

5. *Doe v. Fayette County Children & Youth Servs., No. 8-823, 2010 WL 48554070*

   *(W.D. Pa. Nov. 22, 2010)* ............................................................................ p. 15

6. *Gomez v. Toledo, 446 U.S. 635 (1980)* ........................................................... p. 15

7. *Herrera v. Los Angeles Unified Sch. Dist., 18 F.4th 1156 (9th Cir. 2021)* ........ p. 16

8. *Hensley v. Eckerhart, 461 U.S. 424 (1983)* ..................................................... p. 22

9. *In re J.L., 483 P.3d 1046 (Okla. 2021)* ........................................................... p. 16

10. *Kirkpatrick v. County of Washoe, 843 F.3d 784 (9th Cir. 2016)* ...................... p. 10

11. *Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30 (1989)* ........... p. 16

12. *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle, 429 U.S. 274 (1977)* ......... p. 15

13. *Ochoa v. City of Mesa, 26 F.4th 1050 (9th Cir. 2022)* .................................... p. 13

14. *Parham v. J.R., 442 U.S. 584 (1979)* .............................................................. p. 19

15. *Perry v. Sindermann, 408 U.S. 593 (1972)* ...................................................... p. 15

16. *Porter v. Osborn, 546 F.3d 1131 (9th Cir. 2008)* ............................................ p. 14

17. *Santosky v. Kramer, 455 U.S. 745 (1982)* ....................................................... p. 13, 17

18. *Scanlon v. County of Los Angeles, 92 F.4th 781 (9th Cir. 2024)* ..................... p. 10

19. *Stanley v. Illinois, 405 U.S. 645 (1972)* ............................................................ p. 17

20. *Tennessee v. Lane, 541 U.S. 509 (2004)* ........................................................... p. 17

21. *Troxel v. Granville, 530 U.S. 57 (2000)* ..................................................... p. 13, 17

22. *Ward v. City of San Jose, 967 F.2d 280 (9th Cir. 1991)* ..................................... p. 15

23. *Wheeler v. City of Santa Clara, 894 F.3d 1046 (9th Cir. 2018)* ........................ p. 10

## Statutes and Regulations

1.  18 U.S.C. § 241 ................................................................................... p. 17, 20

2.  18 U.S.C. § 242 ......................................................................................... p. 20

3.  18 U.S.C. § 1001 ....................................................................................... p. 22

4.  18 U.S.C. § 666 ......................................................................................... p. 22

5.  25 U.S.C. § 1901 et seq. (Indian Child Welfare Act) ........................................ p. 16

6.  25 U.S.C. § 1912 ....................................................................................... p. 16

7.  25 U.S.C. § 1922 ....................................................................................... p. 16

8.  28 U.S.C. § 1331 (Federal Question Jurisdiction) ............................................. p. 4

9.  28 U.S.C. § 1343(a)(3) (Civil Rights Jurisdiction) ............................................. p. 4

10. 28 U.S.C. § 1391(b) (Venue) ....................................................................... p. 4

11. 31 U.S.C. § 3729 et seq. (False Claims Act) ................................................... p. 20

12. 42 U.S.C. § 1983 (Civil Rights) ................................................................ p. 13-17

13. 42 U.S.C. § 1985(3) (Conspiracy to Interfere with Civil Rights) ...................... p. 4

14. 42 U.S.C. § 12132 (Americans with Disabilities Act) ........................................ p. 17

15. 42 U.S.C. § 14141 (Pattern or Practice of Rights Violations) ......................... p. 13

16. 42 U.S.C. § 1988 (Attorneys' Fees) ................................................................ p. 22

17. 10A O.S. § 1-1-105 (Oklahoma Child Welfare Act) ........................................ p. 10

18. 10A O.S. § 1-4-807 (Child Custody Standards) ............................................... p. 10

19. 43 O.S. § 112 (Custody Determinations) ......................................................... p. 10

## **Other Authorities**

1. *Dees v. County of San Diego, 960 F.3d 1145 (9th Cir. 2020)*........................... p. 20

2. *David v. Kaulukukui, 38 F.4th 792 (9th Cir. 2022)*........................................... p. 16

3. *Hernandez v. Foster, 657 F.3d 463 (7th Cir. 2011)*.......................................... p. 17

4. *Siliven v. Indiana Dep't of Child Servs., 635 F.3d 921 (11th Cir. 2011)*.............p. 17

5. *State ex rel. Southwestern Bell Tel. Co. v. Brown, 655 P.2d 546 (Okla.1982)*....p. 17

# I.   INTRODUCTION

Plaintiff, Hailie Nicole Luther, a resident of Grady County, Oklahoma, brings this action against the Oklahoma Department of Human Services (DHS) and individual DHS employees in both their official and individual capacities for violations of Plaintiff's constitutionally protected rights and federal statutory rights. Additionally, Plaintiff asserts Qui Tam claims under the False Claims Act (31 U.S.C. § 3729 et seq.), exposing fraudulent conduct by OKDHS and its employees in unlawfully obtaining and misusing federal funds.

Specifically, this Complaint alleges:

1.  Violation of Procedural and Substantive Due Process rights under the Fourteenth Amendment, actionable under 42 U.S.C. § 1983, as established in *Kelson v. City of Springfield*, 767 F.2d 651, 654 (9th Cir. 1985), which holds that parental rights are fundamental liberties protected under the Fourteenth Amendment. Similarly, *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998), affirms that interference with familial relationships without due process is unconstitutional.

2.  First Amendment Retaliation, involving suppression of Plaintiff's protected speech and advocacy against state misconduct (*Ward v. City of San Jose*, 967 F.2d 280, 284 (9th Cir. 1991)), which establishes that government actors may not take retaliatory actions against individuals for engaging in constitutionally protected speech.

3.  Discrimination Under the Americans with Disabilities Act (ADA) due to actions targeting real or perceived disabilities (*Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1106-07 (9th Cir. 2001)), where the court recognized that failure to

5

accommodate disabilities in child welfare cases can constitute discrimination under the ADA.

4.   Violation of the Indian Child Welfare Act (ICWA) for failing to provide tribal notification and placement preferences as required by federal law (*Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30 (1989)), which reinforced the requirement that tribal courts must be notified of cases involving Native American children.

5.   Violations of the False Claims Act (31 U.S.C. § 3729 et seq.), alleging fraudulent claims submitted by OKDHS for federal funding related to child welfare programs (*Dees v. County of San Diego*, 960 F.3d 1145, 1152 (9th Cir. 2020)), which holds that misrepresentations by government agencies to secure federal funds constitute fraud.

6.   False Certifications and Misrepresentations in child removal proceedings, including failure to comply with the Indian Child Welfare Act (ICWA) and Americans with Disabilities Act (ADA) while certifying compliance to federal authorities.

7.   Unjust Enrichment by OKDHS and its agents through unlawful child removals used to secure federal funding under Title IV-E of the Social Security Act.

8.   State-Law Claims for fraud, misrepresentation, and gross negligence.

Defendants systematically subverted Plaintiff's due process, equal protection, and fundamental familial rights through a calculated scheme of fraudulent conduct designed to manipulate and exploit federal funding channels, warranting immediate federal oversight and investigation. Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, treble damages under the False Claims Act,

6

systemic policy reforms to prevent future violations, and other relief as deemed just and proper.

## II.    JURISDICTION AND VENUE

1.  This action is brought pursuant to 42 U.S.C. § 1983, asserting violations of the constitutional rights of the Plaintiff and her minor child under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Additionally, this action raises claims under the Indian Child Welfare Act (ICWA), the Child Abuse Prevention and Treatment Act (CAPTA), the Americans with Disabilities Act (ADA), parental rights doctrines, children's rights, and the federal Color of Law statutes.

2.  This Court possesses subject matter jurisdiction pursuant to:

   a.  28 U.S.C. § 1331 (Federal Question Jurisdiction);

   b.  28 U.S.C. § 1343(a)(3) (Civil Rights Jurisdiction);

   c.  42 U.S.C. § 1983 (Deprivation of Constitutional Rights);

   d.  42 U.S.C. § 1985(3) (Conspiracy to Interfere with Civil Rights);

   e.  31 U.S.C. § 3729 et seq., (False Claims Act);

   f.  42 U.S.C. § 12132 (ADA Discrimination); and

   g.  25 U.S.C. § 1901 et seq. (ICWA).

3.  Venue is proper in this District under 28 U.S.C. § 1391(b), as the events giving rise to this claim occurred in Oklahoma.

## III.    PARTIES

1.  **Plaintiff,** HAILIE NICOLE LUTHER:

   A resident of Grady County, Oklahoma, the biological and legal parent of G.N.L, a

Native American child entitled to protections under ICWA wrongfully removed from her custody by OKDHS in violation of state and federal laws governing parental rights, due process, and child welfare protections. Plaintiff asserts her fundamental right to maintain custody and care of her child, free from arbitrary and unconstitutional state interference, as recognized under the Fourteenth Amendment and established legal precedent.

2. **Defendant,** OKLAHOMA DEPARTMENT OF HUMAN SERVICES (OKDHS):

This a state agency responsible for child welfare administration, overseeing the implementation of child protection laws, foster care placements, and family reunification efforts. OKDHS is tasked with ensuring that all actions taken in child welfare cases adhere to federal and state laws, including the Indian Child Welfare Act (ICWA), the Child Abuse Prevention and Treatment Act (CAPTA), the Americans with Disabilities Act (ADA), and constitutional due process protections. Despite this mandate, OKDHS has engaged in systemic failures, including wrongful child removals, failure to provide appropriate services to parents, noncompliance with ICWA requirements, and procedural violations that deprive parents of their fundamental rights. The agency's failure to uphold its statutory responsibilities has directly contributed to the violations alleged in this case, warranting both injunctive and monetary relief.

3. **Defendants,**

   1. CHLOE WALKER, in her individual capacity;

   2. MICHAEL CASE, in his individual capacity;

   3. CHRISTIE UPCHURCH, in her individual capacity;

   4. ALICIA JACKSON, in her individual capacity;

8

    5.   JENNIFER CASE, in her individual capacity;

    6.   TARYN MONTENEGRO, in her individual capacity; and

    7.   DESTENIE MIRAMONTES, in her individual capacity;

Defendants are employees of the Oklahoma Department of Human Services (OKDHS), sued in their individual and official capacities for their direct participation in the unconstitutional removal of Plaintiff's minor child. Their actions, which include failure to conduct proper investigations, suppression of exculpatory evidence, and violation of federal and state laws governing child welfare, demonstrate a pattern of misconduct that deprived Plaintiff of her fundamental parental rights. Each Defendant played a critical role in the decision-making process that led to the unlawful seizure of Plaintiff's minor child, and their collective failure to adhere to established legal procedures constitutes a willful abuse of authority, subjecting them to both individual and institutional accountability under 42 U.S.C. § 1983 and other applicable laws.

Plaintiff asserts that each Defendant engaged in conduct that was arbitrary, capricious, and violative of statutory mandates and constitutional guarantees, including but not limited to due process protections under the Fourteenth Amendment, procedural requirements outlined in the Indian Child Welfare Act (ICWA) and the Child Abuse Prevention and Treatment Act (CAPTA), and the prohibition against unlawful seizures under the Fourth Amendment. Defendants' actions were not only legally deficient but also demonstrated a reckless disregard for Plaintiff's fundamental rights, causing significant and irreparable harm to both Plaintiff and the minor child. Their failure to comply with established legal safeguards underscores a pattern of systemic misconduct

that necessitates judicial intervention and accountability under federal civil rights
statutes.

## IV.    FACTUAL ALLEGATIONS

1.  On August 19, 2024, OKDHS unlawfully removed Plaintiff's minor child from her
custody based solely on unverified allegations and conjecture, lacking evidentiary
support or due process, lacking judicial authorization or exigent circumstances, in
violation of the Fourth and Fourteenth Amendments (*Wheeler v. City of Santa Clara*, 894
F.3d 1046, 1058 (9th Cir. 2018), confirming that child removal must meet constitutional
standards; *Kirkpatrick v. County of Washoe*, 843 F.3d 784, 789 (9th Cir. 2016), holding
that state actors must follow due process before removing children). Defendants failed to
conduct an independent assessment of the claims, did not provide Plaintiff with a fair
opportunity to respond, and proceeded with removal without establishing imminent harm
or obtaining a court order. The absence of substantiated evidence or procedural
safeguards demonstrates a reckless disregard for Plaintiff's parental rights and the minor
child's well-being. The arbitrary removal inflicted unnecessary trauma on the child,
severed the familial bond without justification, and violated state and federal legal
protections governing child welfare proceedings. Defendants failed to ensure that the
emergency removal complied with 25 U.S.C. § 1922, which mandates that such actions
must only be taken to prevent imminent harm and must be temporary. Instead,
Defendants used emergency removal as a pretext for permanent state intervention.

2.  Defendants failed to conduct an impartial and independent investigation, violating

10

Plaintiff's procedural due process rights under the Fourteenth Amendment. Specifically,

Defendants removed Plaintiff's minor child without first obtaining clear and convincing

evidence, failed to interview key witnesses, disregarded exculpatory statements, and

relied solely on unverified allegations when making their determinations, that the

continued custody with Plaintiff would result in serious emotional or physical harm to the

child, in violation of 25 U.S.C § 1912(e). The lack of a thorough investigation not only

deprived Plaintiff of a fair opportunity to defend against the claims but also resulted in

wrongful actions taken against her and the minor child. Defendants' failure to adhere to

established investigative protocols, as required under state and federal child welfare laws,

demonstrates a deliberate disregard for due process and a systemic failure to ensure

justice in child custody proceedings. Furthermore, Title 42 U.S.C. § 14141 establishes

that it is unlawful for government officials to engage in a pattern or practice of conduct

that deprives individuals of their constitutional rights, which applies directly to the

systematic violations committed by OKDHS.

   3.  Defendants failed to comply with the Indian Child Welfare Act (ICWA) by failing

to notify the child's tribe until the day of the deprived hearing, constituting a violation of

violating ICWA requirements (*25 U.S.C. § 1912(a)*), and preventing tribal intervention

(*In re J.L.*, 483 P.3d 1046 (Okla. 2021), reinforcing that failure to notify the child's tribe

renders custody determinations legally deficient). This failure deprived the tribe of its

right to intervene in the proceedings, ultimately leading to an uninformed and unjust

adjudication of the minor child's welfare. The lack of timely notice prevented the tribe

from advocating for culturally appropriate placements and protections, thereby

exacerbating the trauma inflicted upon the minor child and disrupting the child's connection to their heritage and support system.

4.  Defendants failed to take active measures to prevent the child's removal, contrary to ICWA mandates 25 U.S.C. § 1912(d); *David v. Kaulukukui*, 38 F.4th 792 (9th Cir. 2022)), which affirms the necessity of active remedial efforts before removing Native American children from their families. Additionally, under the Child Abuse Prevention and Treatment Act (CAPTA), Defendants were required to provide procedural safeguards for parents and children involved in child welfare proceedings. Their failure to comply with CAPTA further demonstrates a disregard for federally mandated child protection protocols. Specifically, Defendants did not provide remedial services or rehabilitative programs designed to prevent the breakup of the family, as required under ICWA. This failure deprived the Plaintiff of opportunities to maintain custody, denied the child culturally appropriate placement options, and resulted in unnecessary trauma to the minor child by severing ties with their familial and tribal connections. Defendants' actions violate Title 10A O.S. 1-1-105, which defines the rights of children and parents in Oklahoma's child welfare proceedings, mandating adherence to due process protections before the removal of a child from parental custody.

5.  Defendants deliberately withheld exculpatory evidence, including forensic interview findings exonerating Plaintiff, violating Plaintiff's right to a fair hearing. This exculpatory evidence, which included statements and findings that did not support allegations against Plaintiff, which directly influenced court decisions and violated procedural due process (*Daniels v. Williams*, 474 U.S. 327, 331 (1986)), affirming that

due process is violated when government actors engage in arbitrary deprivations of liberty. By failing to disclose this critical information, Defendants deprived Plaintiff of the ability to challenge the allegations effectively, undermining the integrity of the judicial process and violating established principles of due process. This concealment further demonstrates Defendants' deliberate effort to deprive Plaintiff of her parental rights without legal justification, thereby exacerbating the harm inflicted on both Plaintiff and the minor child.

6. Despite the District Attorney's recommendation to dismiss the case, OKDHS facilitated the minor child's father in obtaining emergency custody, in direct contravention of Oklahoma child welfare statutes and due process protections. OKDHS acted beyond its statutory authority by circumventing the proper judicial process and failing to provide Plaintiff with adequate notice or an opportunity to challenge the custody determination. Such actions violate Oklahoma child welfare laws, including 10A O.S. § 1-4-807, which mandates procedural safeguards before a child may be removed from a parent's custody. Additionally, Defendants' actions contravened the requirements of 43 O.S. § 112, which governs custody determinations and requires judicial oversight to ensure that decisions are made in the best interests of the child. By disregarding these legal mandates, Defendants contributed to an unjust and unlawful interference with Plaintiff's custodial rights, further compounding the harm suffered by both Plaintiff and the minor child. OKDHS acted beyond its statutory authority by circumventing the proper judicial process and failing to provide Plaintiff with adequate notice or an opportunity to challenge the custody determination. Such actions violate established legal

precedents that require clear and convincing evidence before parental rights can be impacted, as set forth in *Santosky v. Kramer*, 455 U.S. 745 (1982), and Oklahoma state law regarding child welfare proceedings.

7.  While in the custody of the minor child's father, the child suffered additional abuse and medical neglect, demonstrating OKDHS's failure to safeguard the child's well-being. Despite prior concerns raised about the father's ability to provide adequate care, OKDHS failed to conduct appropriate welfare checks, ignored evidence of neglect, and neglected to intervene in a timely manner violating the special relationship doctrine established in *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189 (1989), which holds that state actors may be liable for harm when they assume custody of children and fail to protect them (*Scanlon v. County of Los Angeles*, 92 F.4th 781, 799 (9th Cir. 2024)). This inaction directly contributed to the deterioration of the minor child's physical and emotional health. Reports of medical conditions left untreated and observable signs of distress were disregarded, further exacerbating the harm suffered by the child. The failure to monitor the well-being of the minor child while in the father's custody underscores the systemic deficiencies in OKDHS's oversight and enforcement mechanisms, demonstrating a gross dereliction of duty and violation of its mandate to act in the best interest of the child.

8.  When Plaintiff sought medical treatment for the child, OKDHS unlawfully suspended Plaintiff's visitation rights without judicial authorization, further infringing upon her parental rights. The decision to suspend visitation was made arbitrarily, without due process, and without any documented evidence suggesting that Plaintiff's continued

contact with the minor child posed a risk of harm. This unilateral action directly violated

Plaintiff's fundamental right to maintain a relationship with her child, as recognized in

*Troxel v. Granville*, 530 U.S. 57 (2000). Moreover, OKDHS's failure to obtain judicial

approval before implementing such a drastic measure demonstrates a flagrant disregard

for legal safeguards meant to protect parental rights from state overreach. The sudden and

unjustified cessation of contact caused substantial emotional distress to both Plaintiff and

the minor child, further exacerbating the trauma inflicted by Defendants' unlawful

actions. Additionally, Title 18 U.S.C. § 241 criminalizes conspiracies to deprive

individuals of their constitutional rights under federal law, reinforcing the unlawful nature

of Defendants' actions in orchestrating wrongful removals and suppression of parental

rights.

9.   Defendants made baseless allegations concerning Plaintiff's mental health and

imposed a compulsory mental health evaluation without due process, bypassing essential

procedural safeguards such as notice, an opportunity for Plaintiff to challenge the

necessity of the evaluation, and an independent judicial determination. This coercive

action further infringed upon Plaintiff's constitutional rights, depriving Plaintiff of the

ability to defend against unfounded claims. The Supreme Court has recognized in

*Parham v. J.R.*, 442 U.S. 584 (1979), that due process protections are critical when

imposing mental health assessments, particularly when such assessments influence

parental rights. Similarly, in *Addington v. Texas, 441 U.S. 418 (1979)*, the Court held that

a higher standard of proof is required in cases of mental health evaluations impacting

fundamental rights, further underscoring the constitutional deficiencies in Defendants'
actions.

10. OKDHS substantiated Plaintiff for mental injury to the minor child without
conducting any psychological or mental health evaluation of the child, further evidencing
procedural irregularities and an abuse of discretion. The lack of a professional assessment
to support such a serious allegation violates both due process protections and established
child welfare investigative protocols. This failure resulted in unjustified legal
consequences for Plaintiff, including reputational harm, emotional distress, and a
prolonged separation from the minor child. Defendants' actions also contradict best
practices in child welfare cases, where psychological evaluations are critical in
determining whether mental injury has occurred. Without such evaluations, any
substantiation lacks credibility and constitutes a violation of federal and state child
protection laws, further demonstrating Defendants' reckless disregard for proper legal
procedures.

11. The forensic evaluation conducted on the minor child was specifically for
investigating allegations of sexual abuse and did not include any psychological or mental
health assessment relevant to substantiating claims of mental injury. The absence of a
targeted mental health evaluation before substantiating such allegations is a systemic
failure in due process protections and evidentiary standards. Without a professional
psychological assessment, the substantiation of mental injury lacked any credible
foundation, violating both state and federal child welfare protocols and causing undue
harm to Plaintiff and the minor child.

12. Plaintiff contends that Defendants' deliberate and reckless actions deprived the minor child of stability and subjected her to unwarranted psychological trauma, leading to severe emotional distress, disruption of the child's sense of security, and long-term psychological harm. The arbitrary removal from Plaintiff's custody without just cause inflicted deep emotional wounds on the minor child, resulting in anxiety, confusion, and distress due to the sudden separation from her primary caregiver. Additionally, the lack of a structured transition or reunification plan further exacerbated the trauma, demonstrating a failure on the part of Defendants to uphold child welfare standards and best practices. Studies in child psychology have shown that such abrupt separations can lead to long-lasting emotional and behavioral issues, further highlighting the egregious nature of Defendants' conduct.

13. OKDHS substantiated Plaintiff for mental injury to the minor child despite the fact that no psychological or mental health evaluation was ever conducted on the minor child to support such a finding, demonstrating a lack of evidentiary basis and an abuse of discretion by Defendants. The failure to conduct a professional psychological assessment prior to making such a determination violates fundamental due process protections and accepted child welfare standards. The substantiation of mental injury without evidentiary support not only resulted in unwarranted legal consequences for Plaintiff but also caused significant emotional distress and reputational damage. Furthermore, the absence of a psychological evaluation raises concerns about procedural integrity and bias in decision-making, reinforcing a broader pattern of misconduct by Defendants. The arbitrary and baseless substantiation deprived Plaintiff of her parental rights, further

subjecting her to unwarranted legal scrutiny and unjust consequences without an objective foundation.

## V.    LEGAL CLAIMS

### COUNT I:

### VIOLATION OF THE FOURTEENTH AMENDMENT – DUE PROCESS

### (42 U.S.C. § 1983)

Plaintiff incorporates by reference all preceding allegations as though fully set forth herein. Defendants' failure to protect Plaintiff's minor child from harm and their arbitrary removal of the child absent procedural safeguards, including failing to provide adequate notice, a meaningful opportunity to be heard, and an impartial adjudicative process, constitutes a violation of the Due Process Clause of the Fourteenth Amendment. The Ninth Circuit in *Wallis v. Spencer, 202 F.3d 1126 (9th Cir. 2000)*, held that government officials may not remove children from a parent's custody without a court order or exigent circumstances. The Supreme Court in *DeShaney v. Winnebago County Department of Social Services*, *489 U.S. 189 (1989)*, ruled that the Due Process Clause does not impose an affirmative obligation upon state agencies to protect individuals from private harm unless the state has established a "special relationship" by placing the individual in state custody.

In this case, Defendants' failure to conduct adequate investigations, refusal to intervene when the child was subjected to ongoing abuse, and arbitrary removal of the child from Plaintiff's custody without substantive evidence or due process protections mirror the governmental failure in *DeShaney*. However, unlike *DeShaney*, where the state

had not assumed full custody, Plaintiff asserts that Defendants created a state-imposed danger by assuming control over child welfare decisions, removing the child from a fit parent, and subsequently failing to ensure the child's safety while in alternative custody. Specifically, after removing the child, Defendants placed the minor in an environment where known abuse had previously occurred, failed to conduct proper follow-up welfare checks, and disregarded multiple reports of continued harm. Furthermore, OKDHS ignored evidence that the alternative placement posed a higher risk to the child than remaining in the Plaintiff's care, demonstrating a reckless disregard for the minor's well-being and compounding the unconstitutional deprivation of parental rights. The failure of OKDHS and its agents to intervene when the child suffered further abuse under alternative placement highlights a deliberate indifference to the child's well-being, warranting liability under *DeShaney*'s principles.

Further, the state's conduct in unlawfully removing Plaintiff's child, obstructing reunification, and refusing to protect the child from known harm violated both substantive and procedural due process guarantees. The Supreme Court has affirmed in *Santosky v. Kramer*, *455 U.S. 745 (1982)*, that the fundamental liberty interest of parents in the care and custody of their children is constitutionally protected. Similarly, in *Troxel v. Granville*, *530 U.S. 57 (2000)*, the Court reinforced that parents have a fundamental right to make decisions concerning the care, custody, and control of their children and in *Ochoa v. City of Mesa*, *26 F.4th 1050, 1056-57 (9th Cir. 2022)*, reinforcing that arbitrary interference with parental rights is unconstitutional.

19

Defendants' actions, which deprived Plaintiff of this right without adequate justification, directly contravene these legal precedents. By failing to uphold Plaintiff's due process rights, ignoring evidentiary standards, and disregarding procedural requirements mandated under ICWA, ADA, and CAPTA, Defendants engaged in an unconstitutional deprivation of Plaintiff's parental rights and the minor child's safety. Additionally, Defendants' actions violate Tribal Laws 10.4.1 and 10.4.2, which ensure due process protections and parental rights within the jurisdiction of the tribal court, as well as Title 10A O.S. 1-1-105, which provides specific legal standards for child removal and state intervention in family matters. Defendants' actions further violate Title 42 U.S.C. § 14141, which prohibits governmental agencies from engaging in systemic misconduct that violates constitutional rights, and Title 18 U.S.C. § 241, which makes it a criminal offense to conspire to deprive individuals of their constitutional rights.

Plaintiff seeks declaratory relief recognizing these constitutional violations, injunctive relief preventing further unlawful removal actions, and compensatory and punitive damages in the amount of no less than $5,000,000 for emotional distress, reputational harm, and financial burden inflicted by Defendants' unconstitutional conduct.

<u>COUNT II:</u>

<u>VIOLATION OF THE FOURTH AMENDMENT – UNLAWFUL SEIZURE</u>

<u>(42 U.S.C. § 1983)</u>

Defendants effectuated the extrajudicial seizure of Plaintiff's minor child without securing a warrant, obtaining judicial approval, or establishing exigent circumstances,

violating the Fourth Amendment's protection against unreasonable seizures (*Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008); Cnty. of Sacramento v. Lewis, 523 U.S. 833, 843, 846, 851 n.11 (1998))*. The Fourth Amendment guarantees individuals protection from government overreach and arbitrary interference, particularly in matters involving family integrity. The Supreme Court has held in *Camreta v. Greene*, 563 U.S. 692 (2011), that government actors must adhere to constitutional requirements when removing a child from parental custody. Defendants acted without a judicial order or imminent risk of harm, failing to demonstrate exigency or due process in their removal actions. This illegal seizure deprived Plaintiff of her fundamental rights and resulted in emotional and psychological trauma to both Plaintiff and the minor child, constituting an egregious abuse of power.

## COUNT III:

## RETALIATION UNDER 42 U.S.C. § 1983

Under federal civil rights law, retaliatory actions against individuals for engaging in constitutionally protected activities violate 42 U.S.C. § 1983 *(Gomez v. Toledo, 446 U.S. 635 [1980])*. In this case, the Department of Human Services (DHS) engaged in unlawful retaliation against the Plaintiff for exercising her First Amendment rights by making baseless allegations to justify further state intervention *(Doe v. Fayette County Children & Youth Servs., No. 8-823, 2010 WL 48554070, *18-19 (W.D. Pa. Nov. 22, 2010))*. DHS specifically targeted the Plaintiff with fabricated allegations as a direct response to her advocacy efforts, seeking to discredit and silence her. Additionally, DHS intentionally used its authority to obstruct the Plaintiff's ability to advocate, imposing

punitive measures designed to suppress her speech and deter further challenges. These actions constitute a clear violation of the Plaintiff's constitutional rights and warrant legal intervention. The Supreme Court in *Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971)*, established that federal officials can be held individually liable for constitutional violations, reinforcing Plaintiff's claims. Furthermore, *Nieves v. Bartlett, 139 S. Ct. 1715 (2019)*, clarified the burden of proof for retaliation claims, requiring a showing that retaliatory animus was a substantial factor in the adverse action. Plaintiff alleges that Defendants' actions meet this burden by demonstrating clear retaliatory intent in suppressing her advocacy efforts and fabricating allegations against her.

<u>COUNT IV:</u>

<u>VIOLATION OF FIRST AMENDMENT RIGHTS (42 U.S.C. § 1983)</u>

The First Amendment protects individuals from government actions that suppress free speech or retaliate against them for petitioning the government for redress of grievances. Under 42 U.S.C. § 1983, retaliatory actions against protected advocacy are unlawful (see *Perry v. Sindermann, 408 U.S. 593, 597 [1972])*. In this case, the Department of Human Services (DHS) engaged in unconstitutional conduct by suppressing both the Plaintiff's and the child's rights to free expression. DHS explicitly forbade the Plaintiff from contacting law enforcement or medical professionals, thereby infringing on her right to advocate for her child's welfare. Additionally, DHS actively suppressed the child's ability to report abuse, depriving them of their fundamental right to freedom of expression. Further, in direct retaliation for the Plaintiff questioning DHS's conduct, the agency fabricated allegations and took punitive actions against her. Such

retaliatory measures are consistent with those deemed unlawful in *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977).

The Supreme Court in *Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971)*, established that federal officials can be held individually liable for constitutional violations, reinforcing Plaintiff's claims that her First Amendment rights were unlawfully suppressed. Furthermore, in *Nieves v. Bartlett, 139 S. Ct. 1715 (2019)*, the Supreme Court clarified the burden of proof for retaliation claims, requiring a showing that retaliatory animus was a substantial factor in the adverse action. Plaintiff alleges that DHS's actions meet this burden by demonstrating clear retaliatory intent in suppressing her advocacy efforts and fabricating allegations against her. These actions collectively constitute a clear violation of the Plaintiff's and the child's First Amendment rights, warranting legal redress. These actions collectively constitute a clear violation of the Plaintiff's and the child's First Amendment rights, warranting legal redress.

<u>COUNT V:</u>

<u>VIOLATION OF THE INDIAN CHILD WELFARE ACT</u>

<u>(25 U.S.C. § 1912 & 25 U.S.C. § 1922)</u>

Plaintiff incorporates by reference all preceding allegations as though fully set forth herein. Defendants failed to comply with the requirements of the Indian Child Welfare Act (ICWA) by improperly removing Plaintiff's minor child without providing clear and convincing evidence, supported by qualified expert testimony, that continued custody by Plaintiff would result in serious emotional or physical damage to the child, in direct violation of 25 U.S.C. § 1912(e). The statute mandates that before the foster care

23

placement of an Indian child, the state must present such evidence, which Defendants failed to do.

Furthermore, 25 U.S.C. § 1922 requires that during emergency removal of an Indian child, the state must ensure the action is necessary to prevent imminent physical damage or harm and that such action is only temporary. However, Defendants disregarded these protections, failing to take any measures to reunite the child with Plaintiff, despite the absence of any imminent physical harm. Defendants also failed to notify the child's tribe in a timely manner, thereby denying the tribe its right to intervene in the proceedings.

The U.S. Supreme Court has affirmed that failure to comply with ICWA renders state actions in child custody matters legally deficient *(Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30 (1989))*. Oklahoma courts have similarly ruled that failure to notify a child's tribe and adhere to ICWA procedures invalidates state custody determinations *(In re J.L., 483 P.3d 1046 (Okla. 2021))*. Additionally, *Adoptive Couple v. Baby Girl, 570 U.S. 637 (2013)* clarified that ICWA's protections extend to both parents and tribes, reinforcing the necessity of compliance with its provisions. *In Matter of Baby Boy L., 103 P.3d 1099 (Okla. 2004)*, the Oklahoma Supreme Court reinforced the importance of tribal notification and involvement in child custody proceedings. Likewise, *In re L.M.B., 318 P.3d 1191 (Okla. Civ. App. 2014)* found that failure to comply with ICWA's remedial efforts requirement renders child removals procedurally defective.

Furthermore, in *Herrera v. Los Angeles Unified Sch. Dist., 18 F.4th 1156, 1158 (9th Cir. 2021)*, the Ninth Circuit reaffirmed the importance of procedural safeguards

24

when state agencies make decisions affecting fundamental rights, further supporting Plaintiff's claim that Defendants acted unlawfully. Additionally, Tribal Laws 10.5.A-E and 10.6.A-E set forth specific standards for ensuring tribal rights in child welfare cases. Defendants failed to adhere to these established tribal legal protections, further exacerbating their violations under ICWA and federal law.

Defendants' actions constitute a direct violation of ICWA, and as a result, Plaintiff seeks declaratory relief recognizing the state's noncompliance, an injunction prohibiting further ICWA violations, and compensatory damages due to the unlawful and prolonged separation from the minor child.

COUNT VI:

VIOLATION OF PARENTAL RIGHTS

Defendants unlawfully interfered with Plaintiff's fundamental right to parent, violating long-established legal precedent that recognizes parental rights as constitutionally protected under the Due Process Clause of the Fourteenth Amendment. The Supreme Court has repeatedly affirmed the fundamental nature of parental rights in cases such as *Troxel v. Granville*, 530 U.S. 57 (2000), *Santosky v. Kramer*, 455 U.S. 745 (1982), and *Stanley v. Illinois*, 405 U.S. 645 (1972), which hold that the government must demonstrate a compelling interest before infringing upon parental rights. Defendants' actions fail to meet this strict scrutiny standard and constitute an arbitrary and unconstitutional interference with Plaintiff's parental rights.

## COUNT VII:

## FRAUD & MISREPRESENTATION (STATE LAW CLAIM)

Under Oklahoma law, fraudulent actions, including misrepresentation and suppression of material facts, are actionable offenses (see *State ex rel. Southwestern Bell Tel. Co. v. Brown*, 655 P.2d 546 [Okla. 1982]). The plaintiff alleges that the defendant engaged in fraudulent conduct by both suppressing evidence and misrepresenting facts to the court. Specifically, the Department of Human Services (DHS) deliberately concealed exculpatory evidence, thereby misleading the court and impacting the fairness of the proceedings. Additionally, the defendant made false representations and omissions, which directly influenced adverse judicial decisions. These actions not only constitute fraud but also undermine the integrity of the legal process, warranting appropriate legal remedies.

## COUNT VIII:

## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

## (42 U.S.C. § 12101 et seq.)

Defendants violated the Americans with Disabilities Act (ADA) by discriminating against Plaintiff due to perceived or actual disabilities and by failing to provide reasonable accommodations in child welfare proceedings. Federal law mandates that state agencies, including OKDHS, must provide parents with disabilities an equal opportunity to participate in child custody determinations and services. Defendants discriminated against Plaintiff by failing to provide reasonable accommodations *(Siliven v. Indiana Dep't of Child Servs., 635 F.3d 921 (11th Cir. 2011); Hernandez v. Foster, 657 F.3d 463 (7th Cir. 2011))*, failed to conduct an appropriate assessment of Plaintiff's needs under the

26

ADA, and engaged in discriminatory practices that resulted in the unjustified removal of the minor child.

The U.S. Supreme Court and various circuit courts have established that parental rights cannot be infringed based on disabilities unless a clear and present danger is demonstrated. In *Tennessee v. Lane, 541 U.S. 509 (2004)*, the Supreme Court reaffirmed the importance of ensuring individuals with disabilities have full access to legal proceedings, a principle that extends to child custody cases. In *Olmstead v. L.C., 527 U.S. 581 (1999)*, the Supreme Court held that unjustified institutionalization of individuals with disabilities constitutes discrimination under the ADA, reinforcing the necessity of providing reasonable accommodations in all government proceedings, including child custody cases. OKDHS's actions reflect a broader pattern of discrimination against parents with disabilities, violating their rights under Title II of the ADA. Defendants failed to make reasonable accommodations for Plaintiff, denied her an equal opportunity to participate in child welfare proceedings, and improperly used alleged mental health concerns as a pretext to infringe upon her parental rights. The failure to provide reasonable accommodations constitutes a violation of 42 U.S.C. § 12132. These actions not only demonstrate bias against individuals with disabilities but also contribute to systemic discrimination in the child welfare system, further depriving Plaintiff of her constitutional and statutory rights.

As a direct result of Defendants' failure to comply with ADA requirements, Plaintiff experienced undue hardship, including the loss of custody, emotional distress, and reputational harm. The denial of reasonable accommodations and failure to provide

necessary support services placed Plaintiff at a distinct disadvantage in child welfare proceedings, effectively depriving her of an equal opportunity to maintain her parental rights. Defendants' discriminatory actions created insurmountable legal barriers, exacerbated emotional and psychological distress, and undermined the integrity of the adjudicative process. The ADA mandates that public entities make modifications to policies, practices, and procedures to ensure individuals with disabilities receive full and fair participation in legal processes. By failing to provide such accommodations, Defendants not only violated federal law but also subjected Plaintiff to systemic discrimination, further compounding the hardship she endured

## COUNT IX:

## VIOLATION OF CHILDREN'S RIGHTS

Defendants failed to uphold the minor child's rights to safety, medical care, and cultural protection, subjecting the child to harm in violation of federal and state child welfare protections. By neglecting to provide appropriate medical attention, Defendants placed the child at risk of ongoing physical and emotional distress. Furthermore, the failure to consider culturally appropriate placement options violated the Indian Child Welfare Act (ICWA), further severing the child's ties to their tribal community and heritage. This disregard for the child's well-being resulted in prolonged trauma, instability, and a significant violation of both federal statutes and established child welfare principles.

## COUNT X:

## VIOLATION OF FEDERAL COLOR OF LAW STATUTES (18 U.S.C. § 242)

28

Defendants, acting under color of state law, obstructed justice, falsified records, and prevented Plaintiff from exercising parental rights, violating 18 U.S.C. § 242. Specifically, Defendants altered official reports, omitted key evidence, and misrepresented material facts in official case files. Reports falsely attributed statements to Plaintiff that she never made, failed to document exculpatory forensic findings, and deliberately ignored evidence that contradicted the allegations against Plaintiff. Additionally, Defendants manipulated case records by selectively omitting medical reports that indicated no signs of abuse or neglect, further distorting the narrative presented to the court. These actions demonstrate a clear intent to deprive Plaintiff of her legal rights, obstruct justice, and engineer a case outcome unsupported by credible evidence. Specifically, Defendants altered official reports, misrepresented statements in case records, and omitted exculpatory evidence that would have exonerated Plaintiff. These manipulations resulted in an unjust deprivation of Plaintiff's parental rights, a violation of federal protections against government abuse, and a failure to adhere to statutory due process requirements.

### COUNT XI:

### VIOLATION OF THE FALSE CLAIMS ACT (QUI TAM RELIEF)

### (31 U.S.C. § 3729 et seq.)

False Claims Submission: Defendants knowingly submitted false claims to the federal government, certifying that child removals and foster placements complied with federal regulations under Title IV-E, when in fact, such removals were unconstitutional and violated the Indian Child Welfare Act (ICWA) and the Americans with Disabilities

Act (ADA). *In United States ex rel. Escobar v. Universal Health Servs., 579 U.S. 176 (2016)*, the Supreme Court emphasized that liability under the False Claims Act extends to fraudulent misrepresentations that materially affect government payment decisions, reinforcing Plaintiff's claim that OKDHS engaged in deceptive practices to obtain federal funds.

Failure to Provide Required Services: Under Title IV-E, OKDHS is required to make reasonable efforts to prevent the removal of children from their families. In this case, Defendants failed to provide necessary services while falsely reporting compliance to secure federal funds.

Fabrication of Justifications for Removal: OKDHS and its agents manufactured false allegations against Plaintiff to justify the removal of her child, thereby generating federal reimbursement claims under fraudulent pretenses.

Financial Incentives for Unlawful Removals: OKDHS benefits from federal reimbursement schemes tied to foster care placements. Defendants deliberately amplified child removals to inflate federal claims, directly contravening constitutional protections and violating parental autonomy.

False Certifications of ICWA Compliance: OKDHS certified to the federal government that it complied with ICWA protections while failing to notify Plaintiff's tribe in a timely manner, as required by federal law, thereby securing funding through deception. *In re J.L., 483 P.3d 1046 (Okla. 2021)*, established that ICWA violations can invalidate child custody determinations, reinforcing the fraudulent nature of these certifications.

Request for Treble Damages: Under the False Claims Act, Plaintiff seeks treble damages amounting to no less than $10,000,000 for fraudulent claims submitted by OKDHS, along with statutory penalties of up to $23,331 per false claim made to the federal government. Plaintiff further requests a federal injunction barring OKDHS from receiving Title IV-E reimbursements until an independent forensic audit verifies compliance with federal statutes. Plaintiff further asserts that OKDHS's fraudulent practices resulted in the misallocation of an estimated $50,000,000 in federal funding, necessitating a full financial audit and potential clawback of misappropriated funds. Plaintiff further requests a federal injunction barring OKDHS from receiving Title IV-E reimbursements until an independent forensic audit verifies compliance with federal statutes. Plaintiff further asserts that OKDHS's fraudulent practices resulted in the misallocation of millions in federal funding, necessitating a full financial audit.

## VI.    RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief:

1.  The removal of all substantiations made against Plaintiff and Plaintiff's mother by OKDHS, as such determinations were made without proper evidentiary basis or due process. The substantiations were issued in violation of both federal and state laws requiring sufficient factual findings and adherence to procedural safeguards, including the right to a fair hearing and the opportunity to contest allegations. The failure to conduct a thorough and impartial investigation before issuing such substantiations has caused irreparable harm, including reputational damage, emotional distress, and legal consequences affecting Plaintiff's custodial rights and family integrity. Plaintiff seeks full

31

expungement of these records and a permanent injunction preventing OKDHS from issuing similar baseless findings without due process or compliance with ICWA.

2. <u>Qui Tam Relief:</u> Treble damages amounting to at least $10,000,000 and civil penalties of up to $23,331 per false claim made by OKDHS, pursuant to the False Claims Act (31 U.S.C. § 3729 et seq.). Plaintiff further demands the return of no less than $50,000,000 in fraudulently obtained federal funds.

3. <u>A judicial declaration that Defendants' conduct violated Plaintiff's and the minor child's constitutional rights,</u> including but not limited to violations of the Due Process Clause of the Fourteenth Amendment, the Fourth Amendment's protection against unlawful seizure, and violated 25 U.S.C. § 1912(e) and 25 U.S.C. § 1922, as well as Tribal Laws 10.5.A-E and 10.6.A-E, rendering the child's removal unlawful and CAPTA. This declaration should affirm that Defendants acted arbitrarily and capriciously in their actions, failing to adhere to established legal protections designed to preserve family integrity and prevent unwarranted government interference which violated the substantive and procedural due process rights of Plaintiff. Furthermore, this Court should establish clear precedent emphasizing the necessity of due process and proper evidentiary standards in child welfare proceedings to prevent future unconstitutional actions by Defendants or similarly situated agencies.

4. <u>Judicial Oversight:</u> Court-ordered review of OKDHS's financial claims for federal funding, with potential clawback of fraudulently obtained funds. Plaintiff requests the appointment of a special master or independent monitor to oversee compliance with federal and state child welfare laws, ensuring adherence to constitutional protections,

ICWA, and ADA mandates. The oversight body shall have authority to conduct periodic audits, issue corrective action plans, and enforce compliance measures. Additionally, the Court should require quarterly compliance reports and establish a dedicated whistleblower hotline to allow reporting of future fraudulent practices within OKDHS.

5. <u>Immediate return of minor child to the custody of the Plaintiff and an injunction preventing further unlawful removals,</u> ensuring compliance with all constitutional and statutory protections, including the Indian Child Welfare Act (ICWA) and the Child Abuse Prevention and Treatment Act (CAPTA). Additionally, Plaintiff seeks court oversight to mandate compliance with due process requirements before any future child removal actions are taken, safeguarding parental rights against arbitrary government interference.

6. <u>Systemic Reforms:</u> Mandatory annual compliance audits of OKDHS child welfare proceedings, conducted by an independent oversight body, to prevent further violations of ICWA, ADA, and due process requirements. Failure to comply should trigger financial penalties, administrative sanctions, and potential criminal referrals to the U.S. Attorney's Office under 18 U.S.C. § 1001 (False Statements) and 18 U.S.C. § 666 (Theft or Bribery in Programs Receiving Federal Funds). Noncompliance must precipitate substantial financial sanctions and enforceable administrative accountability, ensuring systemic adherence to legal mandates.

7. <u>Compensatory Damages</u> in the amount of **$3,000,000** for emotional distress, mental anguish, and loss of parental association; **$1,000,000** for reputational harm and professional consequences resulting from DHS's actions; and **$1,000,000** for expenses

33

incurred, including legal costs, therapeutic interventions for Plaintiff and child, and other related damages. Punitive Damages in the amount of **$10,000,000** to punish Defendants for willful misconduct, malice, and deliberate indifference to Plaintiff's constitutional and statutory rights.against the individual Defendants for their unlawful conduct, in light of the severe constitutional violations and the lasting emotional, financial, and psychological harm inflicted upon Plaintiff and minor child.

8.  An award of attorneys' fees and costs under 42 U.S.C. § 1988, as Plaintiff has incurred significant financial burdens in seeking redress for the constitutional and statutory violations committed by Defendants. The litigation process has imposed substantial economic hardship on Plaintiff, requiring extensive legal research, court filings, and preparation without the benefit of legal representation. Courts have consistently held that attorneys' fees should be awarded in civil rights cases to ensure that individuals whose rights have been violated are not further disadvantaged by the costs of pursuing justice. In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the U.S. Supreme Court established that prevailing civil rights plaintiffs are entitled to reasonable attorneys' fees to prevent financial barriers from undermining the enforcement of fundamental rights. Plaintiff seeks such relief to cover the financial costs incurred due to Defendants' wrongful actions and to deter future misconduct by state officials. Given the protracted nature of this litigation and the necessity of legal action to correct wrongful conduct, an award of attorneys' fees is justified to ensure access to justice and deter similar government overreach in the future. Courts have routinely recognized the importance of

awarding attorneys' fees in civil rights cases to prevent financial barriers from inhibiting the enforcement of fundamental rights.

9. <u>Any other relief deemed just and equitable in the interest of justice,</u> including but not limited to systemic reforms within OKDHS to ensure compliance with constitutional and statutory mandates, mandatory oversight by an independent review board, and required retraining of caseworkers and supervisors on due process requirements in child welfare cases. Additionally, Plaintiff seeks an order requiring periodic compliance audits to prevent future violations of parental rights and procedural safeguards.

## VII.    JURY DEMAND

Plaintiff respectfully demands a jury trial on all triable issues and intends to call expert witnesses in child welfare fraud, forensic accounting, and constitutional law to substantiate claims of systemic misconduct and financial misrepresentation by OKDHS. Respectfully submitted,

Hailie Nicole Luther
Plaintiff, Pro Se
2 Hillcrest Drive
Chickasha, OK 73018
405-892-3367
hailienluther@yahoo.com

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

1) HAILIE NICOLE LUTHER, individually )
   and as the natural mother of G.N.L )
                                    )
         Plaintiff, )
    v.                               ) Case No.
                                      )

1) THE STATE OF OKLAHOMA, ex rel, )
   THE STATE OF OKLAHOMA DEPARTMENT )
   OF HUMAN SERVICES, an Oklahoma )
   Political subdivision; )
2) CHLOE WALKER, in her individual capacity; )
3) MICHAEL CASE, in his individual capacity; )
4) CHRISTIE UPCHURCH, in her individual )
    capacity; )
5) ALICIA JACKSON, in her individual capacity; )
6) JENNIFER CASE, in her individual capacity; )
7) TARYN MONTENEGRO, in her individual )
    capacity: )
8) DESTENIE MIRAMONTES, in her individual )
    capacity; )
                                      )
         Defendants. )

**Certification of Service**

I, Hailie Nicole Luther, hereby certify that on this _4th_ day of _March_,

2025, I served a true and correct copy of the *Complaint For Declaratory Relief,*

*Injunctive Relief, Damages, And Qui Tam Relief* upon the Defendants listed below via

Certified Mail with return receipt requested, in compliance with Rule 5 of the Federal

Rules of Civil Procedure:

Defendants Served:

1. The State of Oklahoma, ex rel,
   The State of Oklahoma
   Department of Human Services
   Oklahoma Attorney General's
   Office
   313 NE 21st Street
   Oklahoma City, OK 73105

2. Chloe Walker
   323 W Chickasha Ave.
   Chickasha, OK 73018

3. Michael Case
   303 E. Comanche St.
   Norman, OK 73069

4. Christie Upchurch
   303 E. Comanche St.
   Norman, OK 73069

5. Jennifer Case
   323 W Chickasha Ave.
   Chickasha, OK 73018

6. Taryn Montenegro
   303 E. Comanche St.
   Norman, OK 73069

7. Alicia Jackson
   323 W Chickasha Ave.
   Chickasha, OK 73018

8. U.S. Department of Justice
   Office of the Attorney General
   ℅ Pam Bondi
   950 Pennsylvania Avenue, NW
   Washington, D.C. 20530-0001

9. U.S. Department of Justice
   Office of the Inspector General
   ℅ Michael E. Horowitz
   Investigations Division
   950 Pennsylvania Avenue, NW
   Washington, D.C. 20530-0001

I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing

is true and correct.

Respectfully submitted,

Hailie Nicole Luther
Plaintiff, Pro Se
2 Hillcrest Drive
Chickasha, OK 73018
405-892-3367
hailienluther@yahoo.com