UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HAILIE NICOLE LUTHER, individually ) <br> and as the natural mother of G.N.L., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE STATE OF OKLAHOMA ex rel. ) <br> THE OKLAHOMA DEPARTMENT OF ) <br> HUMAN SERVICES, et al., ) <br> ) <br> Defendants. ) | Case No. CIV-25-279-J |

**ORDER**

Before the Court are Plaintiff Hailie Nicole Luther's motions to proceed in forma pauperis (IFP), (Pl.'s IFP Mot.) [Doc. No. 2], for a temporary restraining order (TRO) and preliminary injunction, (Pl.'s Mot. for TRO & Prelim. Inj.) [Doc. No. 4], and for expedited proceedings pursuant to Federal Rule of Civil Procedure 57, (Pl.'s Rule 57 Mot.) [Doc. No. 5].[1] For the reasons below, the Court finds that Plaintiff may proceed IFP but that her complaint fails to state a claim for relief and requests for injunctive and expedited relief should be denied.

**I.    Background**

**A.    Complaint and Motions for Injunctive and Expedited Relief**

Plaintiff filed this action pro se on March 4, 2025. *See* (Compl.) [Doc. No. 1] at 1–36. In her sprawling complaint, she alleges that the Oklahoma Department of Human Services (DHS) and several of its employees—sued in both their official and individual capacities[2]—violated her

---

[1] All page citations refer to the Court's CM/ECF pagination.

[2] Although the case caption identifies the DHS employees as being sued only in their individual capacities, the body of the complaint states that they are sued "in both their official and individual capacities for violations of Plaintiff's constitutionally protected rights and federal statutory rights." *See* Compl. at 1, 6.

Fourteenth Amendment due process rights in connection with the removal of her minor child, G.N.L. She also brings claims for First Amendment retaliation, unlawful seizure under the Fourth Amendment, violations of the Americans with Disabilities Act, state law fraud, and qui tam claims under the False Claims Act. She seeks sweeping relief, including declaratory and injunctive relief, millions in compensatory and punitive damages, and treble damages (under the False Claims Act).

Also on March 4, Plaintiff moved for a TRO and preliminary injunction to "prevent the continued unconstitutional removal" of G.N.L. Pl.'s Mot. for TRO & Prelim. Inj. at 2. In support, she claims that on August 19, 2024, DHS removed G.N.L. from her custody "without a court order, emergency justification, or due process, in direct violation of the Fourteenth Amendment." *Id.* at 3. She also insists that DHS did not comply with tribal notice requirements under the Indian Child Welfare Act, "unlawfully suspended [her] visitation rights without judicial authorization," and facilitated "neglect and medical abuse" of G.N.L. while in her father's custody. *Id.* At bottom, Plaintiff seeks the "immediate return" of G.N.L. to her custody. *Id.* at 6.

The same day, Plaintiff also moved for expedited proceedings pursuant to Federal Rule of Civil Procedure 57.[3] *See* Pl.'s Rule 57 Mot. at 1–7.

Neither motion cites to any evidence in support of injunctive or expedited relief, though both attach nine exhibits. Some exhibits include medical or DHS records documenting Plaintiff's allegations that G.N.L.'s father was abusing her, but the records either conclude the allegations were unsubstantiated or indicate the evidence was inconclusive. *See* Pl.'s Mot. for TRO & Prelim. Inj., Exs. at 4–5; Pl.'s Rule 57 Mot. at 4–5.

---

[3] Rule 57 provides that a court "may order a speedy hearing of a declaratory-judgment action." Fed. R. Civ. P. 57.

In December 2020, G.N.L.'s father, Noah Riedmann, initiated a paternity case in Oklahoma state court. *See Riedmann v. Luther*, No. FP-2020-48 (Grady Cnty. Dist. Ct.).[4] Plaintiff was ultimately awarded primary custody of the child, while Riedmann was granted standard visitation rights. On August 21, 2024, however, Riedmann moved for emergency custody, citing DHS's recent removal of G.N.L. from Plaintiff's care due to her repeated invasive examinations of the child, conducted in an effort to substantiate claims that Riedmann was abusive.[5] The state district court granted Riedmann's emergency request on September 4, 2024. Custody proceedings remain ongoing.

B.     **IFP Motion**

Before moving to the substance of Plaintiff's claims, the Court first addresses her request to proceed IFP. *See* Pl.'s IFP Mot. at 1–2. Upon review of that motion, the Court finds Plaintiff is unable to prepay the fees or costs for this proceeding and grants the application under 28 U.S.C. § 1915(a)(1). *See Lister v. Dep't of Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005) ("Section 1915(a) applies to all persons applying for IFP status, and not just to prisoners."). Given Plaintiff's IFP status, the Court must dismiss her action if it determines that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(i)–(ii); *see also Salgado-Toribio v. Holder*, 713 F.3d 1267, 1270 (10th Cir. 2013) ("[W]e apply

---

[4] Plaintiff attaches a submission from the state court case to her motion for injunctive relief. *See* Pl.'s Mot. for TRO & Prelim. Inj., Ex. 6 at 1–5. The docket for that case is publicly available at https://www.oscn.net.

[5] Attached to Plaintiff's motion for injunctive relief is a DHS record indicating that the agency initially received a referral alleging that Riedmann was abusing G.N.L. during his visitation periods. *See* Pl.'s Mot. for TRO & Prelim. Inj., Ex. 5 at 1. In the course of investigating these allegations, however, DHS concluded that Plaintiff posed an "imminent safety threat" to G.N.L., citing concerns that Plaintiff had repeatedly "taken [her] to medical exams and posed [her] for nude 'up close' and detailed photos of her private region . . . regardless of previous concerns stated by the medical providers." *Id.*, Ex. 5 at 2.

section 1915(e)'s . . . standard to both prisoner and non-prisoner litigation."). Additionally, regardless of IFP status, the Court must dismiss a case when it lacks subject-matter jurisdiction. *See 1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) ("Federal courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party, and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction at any stage in the litigation." (internal quotation marks omitted)).

## II. Legal Standards for Stating a Claim

At a minimum, a complaint must satisfy the basic pleading requirements of Federal Rule of Civil Procedure 8 to state a claim for relief. That rule requires a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient "to provide each individual with fair notice as to the basis of the claims against him or her," *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008); *see also Bralich v. Gayner*, No. 20-cv-3800-RMR-STV, 2021 WL 5763506, at *4 (D. Colo. Nov. 24, 2021) ("At a basic level, Rule 8 requires that a complaint give the opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief."). Through the complaint, a plaintiff "must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). "If a complaint fails to meet these basic pleading requirements, a district court may dismiss the action sua sponte for failure to comply with Rule 8." *Rodriguez v. Nationwide Homes, Inc.*, 756 F. App'x 782, 785 (10th Cir. 2018) (unpublished).

But even where a complaint meets Rule 8's threshold requirements, it may still warrant dismissal for failure to state a claim if it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While detailed factual allegations are not required, the complaint must give just enough factual detail to provide fair notice of what the claim is and the grounds upon which it rests." *Mengert v. United States*, 120 F.4th 696, 712 (10th Cir. 2024) (ellipses and internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

It is well settled that a document "filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal citations and quotation marks omitted). "But this relaxed pleading standard does not excuse a plaintiff from complying with the pleading requirements of *Iqbal*, and the district court cannot become an advocate by constructing arguments on behalf of the plaintiff." *Chase v. Divine*, 543 F. App'x 767, 769 (10th Cir. 2013) (unpublished) (footnote omitted).

### III. Application

#### A. Complaint

As a threshold matter, Plaintiff's complaint fails to comply with Rule 8. Spanning nearly 40 pages, the pleading reads less like a "short and plain statement" and more like an unfocused legal memorandum—replete with constitutional buzzwords, sporadic statutory and case citations, and general grievances.[6] *See, e.g.*, Compl. at 10 ("Plaintiff asserts that each Defendant engaged in

---

[6] The Court has serious reason to believe that Plaintiff used artificial intelligence tools to assist in drafting her complaint. Among other indicators, the complaint cites to legal authorities that do not

5

conduct that was arbitrary, capricious, and violative of statutory mandates and constitutional guarantees, including but not limited to due process protections under the Fourteenth Amendment, procedural requirements outlined in the Indian Child Welfare Act . . . and the Child Abuse Prevention and Treatment Act . . . , and the prohibition against unlawful seizures under the Fourth Amendment."); *id.* at 14–15 ("[DHS] acted beyond its statutory authority by circumventing the proper judicial process and failing to provide Plaintiff with adequate notice or an opportunity to challenge the custody determination.  Such actions violate established legal precedents that require clear and convincing evidence before parental rights can be impacted, as set forth in *Santosky v. Kramer*, 455 U.S. 745 (1982), and Oklahoma state law regarding child welfare proceedings."); *id.* at 16 ("Defendants made baseless allegations concerning Plaintiff's mental health and imposed a compulsory mental health evaluation without due process, bypassing essential procedural safeguards such as notice, an opportunity for Plaintiff to challenge the necessity of the evaluation, and an independent judicial determination.  This coercive action further infringed upon Plaintiff's constitutional rights, depriving Plaintiff of the ability to defend against unfounded claims.  The Supreme Court has recognized in *Parham v. J.R.*, 442 U.S. 584 (1979), that due process protections are critical when imposing mental health assessments, particularly when such assessments influence parental rights."); *id.* at 19 ("Defendants' failure to protect Plaintiff's minor child from harm and their arbitrary removal of the child absent procedural safeguards, including failing to provide adequate notice, a meaningful opportunity to be heard, and an impartial adjudicative process constitutes a violation of the Due Process Clause of the Fourteenth Amendment.  The Ninth Circuit in *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000), held that government officials

---

appear to exist.  *See, e.g.*, Compl. at 25 (citing *In re J.L.*, 483 P.3d 1046 (Okla. 2021), which the Court has been unable to locate in any official reporter or legal database).

may not remove children from a parent's custody without a court order or exigent circumstances." (cleaned up)); *id.* at 21 ("By failing to uphold Plaintiff's due process rights, ignoring evidentiary standards, and disregarding procedural requirements mandated under [the Indian Child Welfare Act], [the Americans with Disabilities Act], and [the Child Abuse Prevention and Treatment Act], Defendants engaged in an unconstitutional deprivation of Plaintiff's parental rights and the minor child's safety. Additionally, Defendants' actions violate Tribal Laws 10.4.1 and 10.4.2, which ensure due process protections and parental rights within the jurisdiction of the tribal court, as well as Title 10A O.S. 1-1-105, which provides specific legal standards for child removal and state intervention in family matters. Defendants' actions further violate Title 42 U.S.C. § 14141, which prohibits governmental agencies from engaging in systemic misconduct that violates constitutional rights, and Title 18 U.S.C. § 241, which makes it a criminal offense to conspire to deprive individuals of their constitutional rights."). It lacks the clarity needed to determine what happened, when it happened, or what specific conduct is attributed to each DHS employee. Indeed, although Plaintiff sues seven individual DHS employees, the complaint refers to them collectively throughout and rarely, if ever, attributes specific conduct to any one of them. *See, e.g.*, *id.* at 10 ("Defendants are employees of [DHS], sued . . . for their direct participation in the unconstitutional removal of Plaintiff's minor child. Their actions, which include failure to conduct proper investigations, suppression of exculpatory evidence, and violation of federal and state laws governing child welfare, demonstrate a pattern of misconduct that deprived Plaintiff of her fundamental parental rights. Each Defendant played a critical role in the decision-making process that led to the unlawful seizure of Plaintiff's minor child . . . ."); *id.* at 12 ("Defendants' failure to adhere to established investigative protocols, as required under state and federal child welfare laws, demonstrates a deliberate disregard for due process and a systemic failure to ensure justice in child

custody proceedings."); *id.* at 27 ("Defendants violated the Americans with Disabilities Act . . . by discriminating against Plaintiff due to perceived or actual disabilities and by failing to provide reasonable accommodations in child welfare proceedings."). This approach falls short of even the basic notice-pleading requirements set forth in Rule 8.

And that is before even turning to the substance of Plaintiff's claims individually, each of which suffers from its own deficiencies. Plaintiff relies principally on alleged constitutional violations—including due process under the Fourteenth Amendment, retaliation under the First Amendment, and unlawful seizure under the Fourth Amendment—in seeking declaratory, injunctive, and monetary relief. But it is well established that "the Constitution does not provide, by itself, a cause of action to address alleged violations of its provisions; [a] plaintiff must instead bring their claims of constitutional violations under a statute that provides a cause of action, such as [42 U.S.C.] § 1983." *Magary v. Sprint Nextel Corp.*, No. 4:18-cv-00050-FL, 2018 WL 3249485, at *2 (E.D.N.C. June 1, 2018). Plaintiff unsurprisingly brings her constitutional claims under § 1983, *see* Compl. at 8 ("This action is brought pursuant to 42 U.S.C. § 1983 . . . ."), which provides a remedy for violations of federally protected rights committed by "persons" acting under color of state law, *Knopf v. Williams*, 884 F.3d 939, 943 (10th Cir. 2018).

Yet "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). And "[t]he Tenth Circuit . . . and federal district courts in Oklahoma have held that DHS is [an] agency that is treated as an arm of the state . . . and [thus] is not a person that can be sued under § 1983." *Cox v. Oklahoma*, No. 19-CV-0483-CVE-FHM, 2020 WL 1073960, at *3 (N.D. Okla. Mar. 5, 2020) (collecting cases).

Moreover, the Eleventh Amendment generally bars suits against the State and its officials acting in their official capacities "regardless of the nature of the relief sought."[7] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Higganbotham v. Oklahoma ex rel. Okla. Transp. Comm'n*, 328 F.3d 638, 644 (10th Cir. 2003) (explaining that "Eleventh Amendment immunity squarely applies" when a plaintiff sues "the state and its agencies seeking declaratory and injunctive relief").[8]  And while the Supreme Court has created a "narrow exception" to Eleventh Amendment immunity for suits against state officials, *Elephant Butte Irrigation Dist. of N.M. v. Dep't of Interior*, 160 F.3d 602, 607 (10th Cir. 1998), that exception is limited to "suits seeking prospective injunctive relief,"[9] *Buchheit v. Green*, 705 F.3d 1157, 1159 (10th Cir. 2012) (citing *Ex Parte Young*, 209 U.S. 123, 159–60 (1908); *Chamber of Com. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010)), and only where the named state official actually "ha[s] the power to perform the act required," *Klein v. Univ. of Kan. Med. Ctr.*, 975 F. Supp. 1408, 1417 (D. Kan. 1997) (citing *Ex Parte Young*, 209 U.S. at 157).

Putting this all together, Plaintiff's constitutional claims fail as a matter of law to the extent they are asserted against DHS and its employees in their official capacities for monetary damages

---

[7] "Eleventh Amendment immunity is jurisdictional." *Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017).

[8] A State may be subject to suit where it has waived its immunity, consented to suit, or where Congress has validly abrogated that immunity. *See Harris v. Owens*, 264 F.3d 1282, 1290 (10th Cir. 2001).  However, there is no indication that DHS has waived its immunity or otherwise consented to suit.  And "the Supreme Court has previously held that Congress did not abrogate the states' eleventh amendment immunity when it enacted § 1983." *Miller v. Okla. Dep't of Hum. Servs.*, No. CIV-22-507-D, 2022 WL 16541217, at *2 (W.D. Okla. Oct. 28, 2022) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)).

[9] Determining whether a request for injunctive relief is prospective requires a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (brackets and internal quotation marks omitted).

or for retroactive relief they lack the authority to provide.[10] This includes Plaintiff's primary request for injunctive relief—the immediate return of G.N.L. to her custody—as it appears that the child is not currently in DHS custody.

Plaintiff's claims under Title II of the Americans with Disabilities Act (ADA)[11] similarly fail, though for different reasons.[12] To state a claim under Title II of the ADA, a plaintiff must allege "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some entity's services, programs, or activities, or was otherwise discriminated against by the public entity, and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability." *Villa v. D.O.C. Dep't of Corr.*, 664 F. App'x 731, 734 (10th Cir. 2016) (unpublished) (internal quotation marks omitted). "The ADA requires more than physical access to public entities: it requires public entities to provide meaningful access to their programs and services." *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1195 (10th Cir. 2007) (emphasis and internal quotation marks omitted). To effectuate this mandate, federal regulations "require public entities to 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability.'" *Id.* (quoting 28 C.F.R. § 35.130(b)(7)).

---

[10] Plaintiff's claim for a violation of "parental rights," grounded in the "Due Process Clause of the Fourteenth Amendment," is duplicative of her broader due process claim and fails for the same reasons. Compl. at 26.

[11] Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

[12] At this stage, the Court declines to address whether the Eleventh Amendment bars Plaintiff's ADA claims. *See Guttman v. Khalsa*, 669 F.3d 1101, 1106 (10th Cir. 2012) (affirming dismissal of Title II ADA damages claim against New Mexico on Eleventh Amendment grounds).

Here, Plaintiff alleges broadly that "Defendants violated the . . . ADA . . . by discriminating against Plaintiff due to perceived or actual disabilities and by failing to provide reasonable accommodations in child welfare proceedings." Compl. at 27; *see also id.* at 28 ("Defendants failed to make reasonable accommodations for Plaintiff, denied her an equal opportunity to participate in child welfare proceedings, and improperly used alleged mental health concerns as a pretext to infringe upon her parental rights."). Plaintiff does not, however, provide any facts identifying a specific disability or perceived disability, any accommodations she requested or required, or any causal connection between the alleged disability and the purported discrimination. Her failure to do so renders her ADA claim conclusory and insufficient to state a plausible claim for relief.

Next, Plaintiff's claims under the Indian Child Welfare Act (ICWA) fail at the threshold because (1) the ICWA does not create a private right of action for the sweeping relief she seeks; and (2) state custody proceedings are ongoing.

Congress enacted the ICWA to address "rising concern in the mid–1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32 (1989). At its core, the ICWA "establish[es] minimum [federal] standards for . . . child custody proceedings involving Indian children." *Kiowa Tribe of Okla. v. Lewis*, 777 F.2d 587, 591 n.4 (10th Cir. 1985).

First, the ICWA "lays out a dual jurisdictional scheme," establishing "exclusive jurisdiction in the tribal courts for proceedings concerning an Indian child 'who resides or is domiciled within the reservation of such tribe.'" *Holyfield*, 490 U.S. at 36 (quoting 25 U.S.C. §

11

1911(a)). In cases involving Indian children not domiciled or residing on a reservation, the ICWA "creates concurrent but presumptively tribal jurisdiction"; "on petition of either parent or the tribe, state-court proceedings for foster care placement or termination of parental rights are to be transferred to the tribal court, except in cases of 'good cause,' objection by either parent, or declination of jurisdiction by the tribal court." *Id.* (quoting 25 U.S.C. § 1911(b)).

Next, the ICWA establishes "procedural and substantive standards for those child custody proceedings that do take place in state court." *Id.* Procedurally, this includes "requirements concerning notice and appointment of counsel; parental and tribal rights of intervention . . . ; procedures governing voluntary consent to termination of parental rights; and a full faith and credit obligation in respect to tribal court decisions." *Id.* (citing 25 U.S.C. §§ 1901–1914).

But the ICWA "does not provide a private right of action against participants in the underlying [state] court proceeding." *Parkell v. South Carolina*, 687 F. Supp. 2d 576, 588 (D.S.C. 2009). Its sole express remedial provision, § 1914, permits certain parties (including the Indian child, a parent, or the tribe) to "petition any court of competent jurisdiction" to invalidate a state foster care or termination proceeding that violates §§ 1911, 1912, or 1913. *See* 25 U.S.C. § 1914; *Morrow v. Winslow*, 94 F.3d 1386, 1394 (10th Cir. 1996) ("[Section] 1914 allows a petition to invalidate a state court foster care placement or termination of parental rights action on the grounds that it violated §§ 1911, 1912, or 1913, to be brought in *any* court of competent jurisdiction. We have held that federal district courts have jurisdiction . . . over complaints in which a plaintiff alleges a violation of §§ 1911, 1912, or 1913." (emphasis in original)).

Plaintiff here seeks "declaratory relief recognizing . . . noncompliance, and injunction prohibiting further ICWA violations, and compensatory damages due to the unlawful and

prolonged separation from the minor child." Compl. at 26. Construed liberally, her complaint also suggests that ICWA violations should entitle her to the return of G.N.L. to her custody.

But the ICWA "does not provide for a cause of action for money damages. The only relief that can be provided is declaratory relief . . . ." *Fletcher v. Florida*, 858 F. Supp. 169, 173 (M.D. Fla. 1994); *see also McClure v. Dohmen*, No. 4:07 CV 3159, 2009 WL 801586, at *2 (D. Neb. Mar. 24, 2009) ("Plaintiff seeks damages, but such relief is not available under [ICWA]."); *Jackson v. Hennepin Cnty. Dep't of Hum. Res. & Pub. Health*, No. 1:22-cv-00036-VMC, 2023 WL 3019013, at *1 n.6 (N.D. Ga. Jan. 19, 2023) ("ICWA does not create a private right of action for money damages . . . .").

Nor does it "authorize a federal court to decide in whose custody an Indian child belongs." *Talamante v. Pino*, No. 12-01218 MV/GBW, 2014 WL 12481346, at *4 (D.N.M. May 14, 2014). "This is a task that the ICWA prescribes . . . to the concurrent jurisdiction of the tribal and state courts." *Id.*

Finally, to the extent Plaintiff seeks declaratory relief under § 1914, abstention is warranted. In *Morrow*, the Tenth Circuit acknowledged that a federal district court may abstain under the *Younger* abstention doctrine[13] even when the plaintiff seeks relief under § 1914. *See Morrow*, 94 F.3d at 1395 ("[W]e believe that § 1914 and related provisions of the ICWA do not preclude our consideration of abstention."). "Notably, even when a federal court has jurisdiction to grant declaratory relief, the *Younger* abstention doctrine requires a federal court to decline to exercise that jurisdiction when three conditions are met: (1) state judicial proceedings are ongoing, (2) those proceedings implicate an important state interest, and (3) those proceedings offer an

---

[13] *Younger* generally requires federal courts to refrain from interfering with ongoing state proceedings when the federal constitutional claims could be raised in those proceedings and when important state interests are at stake. *See Younger v. Harris*, 401 U.S. 37, 43–44 (1971).

adequate opportunity to litigate federal constitutional issues." *In re Petition of Nowlin*, No. 17–CV–666–TCK–JFJ, 2018 WL 840760, at \*4 (N.D. Okla. Feb. 12, 2018) (citing *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1204 (10th Cir. 2003)).

Here, all three elements are met. First, as discussed above, custody proceedings over G.N.L. are ongoing. Second, "[i]t cannot be gainsaid that adoption and child custody proceedings are an especially delicate subject of state policy"; "[f]amily relations are a traditional area of state concern." *Morrow*, 94 F.3d at 1393 (second quotation quoting *Moore v. Sims*, 442 U.S. 415, 435 (1979)). Third, nothing in the record suggests that Plaintiff lacks a meaningful opportunity to raise ICWA-related arguments in state court. Indeed, the underlying state court docket reflects that she has already challenged that court's jurisdiction. For these reasons, the Court finds that abstention over Plaintiff's ICWA claims is warranted.

Plaintiff's qui tam claims under the False Claims Act (FCA) are likewise barred. *See* Compl. at 30–32. "The FCA allows a private person, referred to as a relator, to bring an FCA suit on behalf of the government in what is known as a qui tam action." *United States v. Boeing Co.*, 825 F.3d 1138, 1143 n.2 (10th Cir. 2016). But such actions are subject to several strict procedural requirements. The action must "be brought in the name of the government, filed in camera, remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders." *Meyn v. Citywide Mortg. Assocs., Inc.*, No. 16-2492-CM, 2016 WL 7336415, at \*1 (D. Kan. Dec. 19, 2016) (citing 31 U.S.C. § 3730(b)(1)–(4)). During this period, "[t]he government may elect to intervene and proceed with the action or notify the court that it declines." *Id.* "If the government declines, the person bringing the action may proceed." *Id.*

Plaintiff failed to comply with these procedural requirements, which alone may warrant dismissal of her qui tam claims. *See id.* at \*2 (collecting cases). More fundamentally, however,

Plaintiff seeks to bring her qui tam claims pro se. That is not permitted: "A pro se litigant may not bring a *qui tam* action." *United States ex rel. May v. United States*, 839 F. App'x 214, 217 (10th Cir. 2020) (unpublished) (citing *Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 246 (4th Cir. 2020)).

That leaves only Plaintiff's claims under 18 U.S.C. § 242, her "children's rights" claims on behalf of G.N.L., and her state-law claims for fraud. *See* Compl. at 27, 29–30. First, 18 U.S.C. § 242 is a criminal statute and does not provide for a private civil cause of action. *Henry v. Albuquerque Police Dep't*, 49 F. App'x 272, 273 (10th Cir. 2002) (unpublished). Next, to the extent Plaintiff seeks to assert claims on behalf of G.N.L., *see* Compl. at 29 (claiming vaguely that "Defendants failed to uphold the minor child's rights to safety, medical care, and cultural protection"), those claims must also be dismissed because "a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney." *Shophar v. United States*, 838 F. App'x 328, 331 (10th Cir. 2020) (unpublished) (quoting *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986)).

Finally, the Court turns to Plaintiff's state tort claims for fraud. Oklahoma's Governmental Tort Claims Act (GTCA) establishes sovereign immunity for Oklahoma and its political subdivisions, including DHS, but waives that immunity in limited circumstances. Okla. Stat. tit. 51, § 152.1(A)–(B). Notably, the GTCA bars liability for "act[s] or omission[s] of an employee acting outside the scope of the employee's employment," *id.* § 153(A), and for claims "based upon an act or omission of an employee in the placement of children," *id.* § 155(29).

In asserting fraud, Plaintiff alleges only that "DHS . . . deliberately concealed exculpatory evidence, thereby misleading the court and impacting the fairness of the proceedings. Additionally, [DHS] made false representations and omissions, which directly influenced adverse

15

judicial decisions." Compl. at 27. Because DHS acts only through its employees, Plaintiff is presumably attributing this conduct to unidentified DHS caseworkers.

But fraud is explicitly excluded from the scope of employment under the GTCA. *See* Okla. Stat. tit. 51, § 152(12) ("'Scope of employment' means performance by an employee acting in good faith within the duties of the employee's office or employment . . . but shall not include corruption or fraud."). And when a government employee acts outside the scope of employment, "the government employer is not liable for that employee's actions." *Lynch v. Bd. of Cnty. Comm'rs of Muskogee Cnty.*, 786 F. App'x 774, 788 n.12 (10th Cir. 2019) (unpublished).

That would still leave open the possibility of individual-capacity claims against DHS employees. But Plaintiff fails to state a claim in this respect due to the same overarching deficiency that plagues her complaint more broadly: She makes no allegation that any particular DHS employee made a false representation, in what context the statement was made, or how anyone relied on it. Consequently, Plaintiff's fraud claim against DHS is barred by the GTCA, and her allegations lack the specificity necessary to state a plausible claim against any individual DHS employee.

In sum, Plaintiff's complaint fails to comply with Rule 8 and otherwise fails to state a claim on which relief may be granted. However, the Court cannot say at this stage that amendment would be futile as to all claims. *See Cain v. Aragon*, 632 F. App'x 517, 518 (10th Cir. 2016) (unpublished) ("Although as a general rule, a pro se party should be given leave to amend, a district court acts within its discretion where it is obvious that the pro se litigant cannot prevail based upon the facts alleged and amendment would be futile."). Accordingly, Plaintiff is granted leave to file an amended complaint to the extent she can allege viable claims against DHS employees in their *individual capacities* under § 1983 (for alleged violations of the First, Fourth, or Fourteenth

Amendments), under Title II of the ADA, or for state fraud. Any amended complaint must clearly identify the conduct of each individual defendant, include specific factual allegations supporting each claim, and comply with the pleading standards set forth in Federal Rules of Civil Procedure 8 and 9. All other claims—those brought against DHS or its employees in their official capacities, those brought under the ICWA, the FCA, 18 U.S.C. § 242, or on behalf of the minor child—are dismissed without leave to amend.

### B.    Motions for Injunctive and Expedited Relief

The Court quickly disposes of Plaintiff's request for injunctive relief. In determining whether to grant a TRO, courts consider four factors: (1) whether the movant has a substantial likelihood of success on the merits; (2) whether irreparable harm will ensue if the request is denied; (3) whether the threatened injury outweighs the harm that the TRO may cause the opposing party; and (4) whether, if issued, the TRO would not adversely affect the public interest. *See Gen. Motors Corp. v. Urb. Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). "[I]njunctive relief is an 'extraordinary remedy,' and the movant must demonstrate a 'clear and unequivocal right' to have a request granted." *Legacy Church, Inc. v. Kunkel*, 455 F. Supp. 3d 1100, 1132 (D.N.M. 2020) (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)).

Here, Plaintiff's request fails at the first step. As explained above, she has not stated a single claim upon which relief may be granted. Although lengthy, the complaint consists largely of conclusory assertions, sweeping legal generalities, and broad grievances, without tying those allegations to any specific factual conduct by any individual defendant. And the Court has concluded that many of Plaintiff's claims are flatly barred as a matter of law. This alone forecloses her request for injunctive relief. *See Ortega v. Lujan Grisham*, 741 F. Supp. 3d 1027, 1093–94 (D.N.M. 2024) (observing that "likelihood of success on the merits" is the "most important

consideration in the TRO and [preliminary injunction] analysis" (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

Even setting that aside, the motion still fails because the specific injunctive relief Plaintiff seeks is not legally available. Chief among her requests is the immediate return of G.N.L. to her custody. *See* Pl.'s Mot. for TRO & Prelim. Inj. at 6. But Plaintiff asserts no viable claim that would entitle her to that relief, and the record reflects that G.N.L. is not currently in the custody of DHS or any other named defendant. Simply put, Plaintiff has not made the requisite showing for injunctive relief, and her request for injunctive relief, as with her associated request for expedited proceedings, is denied.

## IV.    Conclusion

For the reasons above, Plaintiff's motion to proceed IFP [Doc. No. 2] is GRANTED. Her complaint [Doc. No. 1], however, is DISMISSED for failure to state a claim, with leave to amend as to those *specific* claims identified in this Order. Any amended complaint must be filed within 21 days of the date of this Order—or by April 23, 2025—and must comply with the standards outlined above. If Plaintiff chooses not to file an amended complaint, judgment will be entered in Defendants' favor. Finally, Plaintiff's motions for injunctive relief [Doc. No. 4] and expedited proceedings under Rule 57 [Doc. No. 5] are DENIED.

IT IS SO ORDERED this 2nd day of April, 2025.

_____
BERNARD M. JONES
UNITED STATES DISTRICT JUDGE